UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TORAY PLASTICS (AMERICA), INC.<br><br>Plaintiff,<br><br>v.<br><br>T G PLASTICS TRADING CO. INC. d/b/a NATIONAL PLASTICS TRADING CO., and PLANET EARTH RECYCLING INC.,<br><br>Defendants. | : | C.A. No. 06-219-ML |

**DEFENDANT PLANET EARTH RECYCLING INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

Defendant Planet Earth Recycling Inc. ("Planet Earth") submits this Memorandum in Support of Its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction.

**INTRODUCTION**

Defendant National Plastics Trading Co., Inc. ("National Plastics") purchased oriented polyester ("PET") and oriented polypropylene ("OPP") film from Plaintiff Toray Plastics (America) Inc. that did not meet Plaintiff's product specifications for consumer packaging and industrial applications. (Hereinafter referred to as "Excess Material"). The purchases were based upon verbal agreements or based upon the custom and practice and course of dealing between National Plastics and Plaintiff that had taken place over the 15 years they did business with one another.

On or about April 5, 2004, George Watts, then employed with Plaintiff, sent an e-mail message to Mr. Torge Goderstad reflecting the "Sales agreement between TPA [Plaintiff] and

National Plastics for 4/1/04 thru 12/31/04." *See Exhibit A.* This contract was intended to provide National Plastics the exclusive right to purchase the listed Excess Material from Plaintiff for the period stated in the agreement. Effective November 1, 2004, a new agreement was reached, pursuant to which "National Plastics/Planet Earth" was to receive 100% of Plaintiff's Excess Material through 2005. *See Exhibit B.* When asked why the "Planet Earth" name was suddenly inserted in this agreement, Mr. Watts explained it was done at Plaintiff's request to increase the amount of credit insurance Toray could carry on the accounts receivable that were part of the business relationship with National Plastics.

Q: Why was Toray using National Plastics and Planet Earth as vendors to this material scrap as opposed to just using National Plastics?

A: My recollection of that was that for credit insurance purposes, our finance department wanted to have those companies split up to – because there was a maximum for each of those businesses from a credit insurance purpose.

*Watts Depo. At p.28, ln. 15-22. See Exhibit C.*

In order to obtain this additional credit insurance, Plaintiff had to invoice a different corporate entity. Accordingly, Plaintiff began sending invoices to both National Plastics and Planet Earth. Nothing else about the business relationship changed. Indeed, every invoice continued to be processed and paid exclusively by National Plastics.

Q: Okay. And I see Planet Earth is not mentioned. Do you know why Planet Earth is on the scene now?

A: I believe, by that time, Planet Earth had come into play, you know, for the credit insurance purposes.

Q: Had anything changed with the entry of the Planet Earth entity in your dealings with Mr. Goderstad?

A: I dealt with National and Torge. I didn't deal with them separately, you know, like different companies.

Q: Okay. So, your relationship with them remained the same?

A: Yes.

*Watts Depo at p.71, ln.8-21. Id.*

The fact that National Plastics was the only entity actually conducting business in Rhode Island was demonstrated in an internal e-mail message from Mr. Watts to Rick Schlosser dated February 23, 2005, referring to Toray, Mr. Watts stated, "We have a 100% supply agreement with National for 2005 for our scrap/offspec [Excess Material]." *See Exhibit D.* Again, in December of 2005 Mr. Goderstad sent an e-mail message to Mr. Schlosser of Toray and stated, "In November of 2004, Rick Schlosser and I made an agreement for 100% of the PP Offspec metal and clear rolls as well as 100% of the PP scrap [Excess Material] to be sold to National Plastics Trading Co." *See Exhibit E.* Plaintiff's own internal communications confirmed once again in March of 2006 that Toray and National Plastics were the only real parties to this relationship when Scott Van Winter sent the following e-mail message to Mr. Schlosser, "In light of all that is going on with Planet Earth, I feel that we should discontinue shipping Torayfan scrap to National Plastics as well. I strongly believe that we are going to end up having problems collecting on the National Plastics side ***since they are all the same company***." *See Exhibit F (emphasis added).* From Plaintiff's perspective that was true.

Planet Earth has never purchased Excess Material from Plaintiff. Nevertheless, for its own purposes, Plaintiff began invoicing Planet Earth for Excess Material purchased by National Plastics from one of Plaintiff's divisions while invoicing National Plastics directly for purchases made from Plaintiff's other division. All such invoices, whether in the name of Planet Earth or National Plastics, were paid by National Plastics. Excess Material from Plaintiff was never

received by or on behalf of Planet Earth. Planet Earth's involvement in the purchase of Excess Material from Plaintiff was a fiction unilaterally created by Plaintiff for its own reasons.

The Court lacks personal jurisdiction over Planet Earth. Planet Earth at no time engaged in any business transaction or otherwise made any contacts with Plaintiff or any other persons residing in or doing business in the forum. All claims against Planet Earth should be dismissed.

## ARGUMENT

### I. PLAINTIFF HAS THE BURDEN OF PROOF AS TO JURISDICTION

Personal jurisdiction must be established in order for a court to exercise authority over a party. *CVS Corp. v. Taubman Centers, Inc.*, 225 F.Supp.2d 120, 123 (D.R.I. 2002). The party asserting personal jurisdiction has the burden of proving that jurisdiction is proper. *Id.*

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "lack of jurisdiction over the person" may be asserted as a defense to a claim for relief. Fed. R. Civ. P. 12(b)(2), 28 U.S.C.A. A challenge to personal jurisdiction may be made "in a pleading or by motion," and "shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial." Fed.R. Civ.Proc. Rule 12(d), 28 U.S.C.A.

District courts should be flexible when approaching jurisdictional inquiries, and should "tailor their standards of proof to the circumstances at bar." *CVS Corp.*, 225 F.Supp.2d at 123. In the First Circuit, it is a well-established rule that the party asserting personal jurisdiction cannot merely rely on "unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction." *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992).

Instead, the party asserting jurisdiction must "proffer credible evidence of the necessary jurisdictional facts." *CVS Corp.*, 225 F.Supp.2d at 123.

To withstand a 12(b)(2) motion to dismiss for lack of personal jurisdiction, the party asserting jurisdiction "must allege sufficient facts to make out a *prima facie* case of jurisdiction." *Cerberus Partners, L.P. v. Gadsby & Hannah, LLP*, 836 A.2d 1113, 1118 (R.I. 2003), *citing Ben's Marine Sales v. Sleek Craft Boats*, 502 A.2d 808, 809 (R.I. 1985). In order for a *prima facie* case of personal jurisdiction to be established under Rhode Island law, the requirements of Rhode Island's long-arm statute must be satisfied. *Id.* The statute permits the exercise of personal jurisdiction over nonresident defendants to the extent allowed by the United States Constitution, affording the nonresident due process of law. *Cerberus Partners*, 836 A.2d at 1118, *citing Rose v. Firstar Bank*, 819 A.2d 1247, 1250 (R.I. 2003).

## II. DUE PROCESS REQUIRES A SHOWING OF MINIMUM CONTACTS THAT CANNOT BE MADE HERE

Due process predicates personal jurisdiction upon a defendant's minimum contacts with a forum state. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The mere existence of a contract with an out-of-state party is not enough to establish sufficient minimum contacts in the home state of the party asserting personal jurisdiction such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Nicholas v. Buchanan*, 806 F.2d 305, 307 (1st Cir. 1986); *Cerberus Partners*, 836 A.2d at 1118; *Kalooski v. Albert-Frankenthal AG*, 770 A.2d 831, 832-33 (R.I. 2001), *quoting Ben's Marine Sales*, 502 A.2d at 809.[1] The requirement of minimum contacts "protects defendants from the burden of

---

1 A forum court can claim two separate types of personal jurisdiction that satisfy the minimum contacts standard: general or specific. General personal jurisdiction applies only where the defendant "maintains systematic

having to litigate in an inconvenient forum and...ensures that states 'do not reach out beyond [their] limits...as coequal sovereigns in a federal system.'" *Cerberus Partners*, 836 A.2d at 1118, *quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

The First Circuit utilizes a three-part test to determine whether a defendant has the requisite minimum contacts with the forum state to be subject to specific personal jurisdiction: (1) the claim must arise from or relate to the defendant's contacts with the forum; (2) these contacts must represent a purposeful availment by the defendant of the privilege of conducting activity under the auspices of the forum state's laws; and (3) jurisdiction must be reasonable in light of a variety of factors that bear on the fairness of exposing the defendant to suit in the forum. *CVS Corp.*, 225 F.Supp.2d at 124.

**A. This Action Relates to National Plastics' Contacts with Rhode Island Rather than Any Such Contacts On the Part of Planet Earth**

The "relatedness inquiry" – aimed at determining whether the claims arise from or relate to the defendant's contacts with the forum state – focuses not on the relationship between the parties, but rather "the content of the parties' interactions." *Id.* at 125, *quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 290 (1st Cir. 1999). "[T]he action must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995). In the case of a contract claim, the inquiry focuses on "whether the defendant's forum-based activities are instrumental in the formation of the contract." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)

and continuous contacts with the forum state," regardless of "whether or not the underlying lawsuit is related to those contacts." *CVS Corp. v. Taubman Centers, Inc.*, 225 F.Supp.2d 120, 123, 124 (D.R.I. 2002). If defendant's contacts with the forum state are insufficient to exercise general jurisdiction, specific personal jurisdiction may apply "when the underlying action arises from or is related to a significant subset of contacts between the defendant and the forum." *Id.* The only alleged contacts between Planet Earth and Rhode Island relate to Plaintiff and this action such that there is no meaningful distinction between general and specific jurisdiction in this case.

(citations omitted); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998); *Hahn v. Vermont Law Sch.*, 698 F.2d 48, 51 (1st Cir.1983).

Planet Earth did not maintain contacts with Rhode Island sufficient to establish personal jurisdiction. In fact, its "contacts" can fairly be described as invoices sent to Planet Earth in Colorado for purchases made by its co-defendant in this action, National Plastics, a wholly distinct and separate entity. These invoices were paid by National Plastics.

The only other purported contact with Rhode Island is an insurance form completed by Planet Earth at the request of Plaintiff to procure insurance on behalf of Plaintiff. The contracts to which the insurance pertains are between Plaintiff and National Plastics, not Planet Earth. Notably, that insurance policy is not at issue in this action.

**B. Planet Earth Never Purposefully Availed Itself of the Laws of Rhode Island**

To exercise personal jurisdiction over a defendant, Plaintiff must prove the defendant "has purposefully availed himself of the privileges and protections of a state's laws." *Nicholas*, 806 F.2d at 307. Factors relevant to the inquiry include the voluntariness of the contacts, whether suit within the forum as a result of those contacts was foreseeable, and whether the party opposing jurisdiction was "participating in the local economy and availing itself of the benefits and protections of the forum and its laws." *CVS Corp.*, 225 F.Supp.2d at 125. It is the quality of the contacts, not the quantity of the contacts that demonstrates purposeful availment. *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985). The First Circuit requires a showing that the defendant's contacts were "instrumental in the formation of the contract" to establish purposeful availment. *United Electric, Radio and Machine Workers of America v. 163 Pleasant Street*, 960 F.2d 1080, 1089 (1st Cir. 1992).

Planet Earth did not purposefully avail itself of the privileges and protections of the law of Rhode Island. Planet Earth's alleged contacts boil down to invoices sent to Planet Earth in Colorado after formation of the contract between Plaintiff and National Plastics. These invoices were for orders placed by National Plastics and were paid by National Plastics. Plaintiff's institution of this accounting procedure is discussed in the deposition testimony of Mr. George Watts, excerpts of which are attached at Exhibit C. It cannot be said that any contact with Planet Earth was voluntary or instrumental in the formation of the contract at issue. Planet Earth did not participate in the Rhode Island economy, having never transacted business there, so it was not foreseeable that Planet Earth would be sued in Rhode Island.

All contacts between Rhode Island and Planet Earth were initiated from within Rhode Island by and on behalf of Plaintiff. It was Plaintiff who reached out, not Planet Earth. Plaintiff cannot be permitted to obtain jurisdiction by pretextual "contacts" with Planet Earth that are, in reality, fictions created by Plaintiff for insurance purposes. Plaintiff unilaterally reached out to bring Planet Earth into a business relationship and ensuing dispute between Plaintiff and National Plastics. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Helicopteros Nacionales*, 466 U.S. at 417 (citations omitted). Planet Earth lacks the minimum contacts with Rhode Island to subject it to personal jurisdiction.

**C. Reasonableness – "Gestalt Factors"**

Only upon affirmative showing of relatedness and purposeful availment does the court reach the third step of the inquiry: whether the defendant's conduct and connection with the forum state is such that he should reasonably anticipate being haled into court there. *Nicholas*,

806 F.2d at 307. Factors related to the **fairness** of subjecting a nonresident to personal jurisdiction must be considered "**even where purposefully generated contacts exist**." *United Electric Workers*, 960 F.2d at 1088 (emphasis added). These factors are referred to by the First Circuit as the "gestalt factors," and include the following: "1) the defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies." *Id.*, *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The "gestalt factors" do not come into play unless and until the plaintiff establishes the defendant "has purposefully established minimum contacts with the forum state." *Cerberus Partners*, 836 A.2d at 1121-22. If the plaintiff fails to prove defendant established the requisite minimum contacts the reasonableness inquiry and the above "gestalt factors" cannot be employed. *Cerberus Partners*, 836 A.2d at 1121; *see, e.g., CVS Corp.*, 225 F.Supp. at 127-28.

Even if the Court finds Planet Earth purposefully established minimum contacts with Rhode Island, it should decline to exercise personal jurisdiction over Planet Earth based on the "gestalt" analysis outlined above. Each of the five factors to be weighed in determining the fairness of exercising personal jurisdiction over Planet Earth militates against doing so.

1. <u>Undue Burden Placed on Planet Earth</u>

Planet Earth is a Colorado corporation. Its offices are located more than 2,000 miles from the courthouse where this action is venued. All of Planet Earth's business is conducted

west of the Mississippi River. Simply from the standpoint of travel required to appear in the forum, the burden on Planet Earth is substantial.

Notwithstanding the logistical burden of appearing, there is the burden of participating in a litigation unrelated to Planet Earth's business. Planet Earth never purchased Excess Material from Plaintiff and therefore cannot owe any amount for such a purchase. There were no contracts or duties to breach. Even to force Planet Earth to participate in discovery – produce financial records, correspondence, and witnesses for deposition – let alone trial, places a huge burden on its resources. Given the paucity of its contacts with Plaintiff and the forum state of Rhode Island, this burden is undue.

2. <u>Rhode Island Has No Interest In Adjudicating the Dispute</u>

Plaintiff's sole basis for asserting claims against Planet Earth rests upon Plaintiff's unilateral decision to identify one of the two National Plastics accounts as "Planet Earth" to keep the two divisions separate from an accounting perspective for purposes of increasing its insurance coverage. In reality, any invoice sent to Planet Earth was processed and paid by National Plastics. Any amount owed on an invoice sent to Planet Earth is owed by National Plastics. Since Plaintiff remains free to pursue all of its claimed damages against National Plastics, the interests of Rhode Island will be served without exercising jurisdiction over Planet Earth.

3. <u>Plaintiff Will Enjoy Convenient and Effective Relief Without Litigation of Its Claims Against Planet Earth in Rhode Island</u>

As discussed above, Planet Earth did not transact business with Plaintiff; it was a fiction designed to accommodate the needs of Plaintiff. Whatever debt that is owed on invoices carrying the Planet Earth name is debt owed by National Plastics. The convenience and

effectiveness of Plaintiff's relief will not be impacted in any way by the dismissal of Planet Earth for lack of personal jurisdiction. If anything, the litigation will be more convenient and efficient for Plaintiff if Planet Earth is dismissed as discovery and trial will consume fewer resources of the parties and the Court.

4. Judicial Resources Will Be Conserved

At the heart of the matter is the simple fact that Planet Earth's "contacts" with Plaintiff and Rhode Island are tenuous at best. No business was transacted between Planet Earth and Plaintiff. Absent Plaintiff making an affirmative showing of actual business contacts between Plaintiff and Planet Earth – its burden in opposition to this motion – the judicial resources of the U.S. District Court for the District of Rhode Island will be senselessly squandered if personal jurisdiction is exercised here.

5. No Substantive Social Policy Is Served

Planet Earth is a Colorado corporation doing business primarily in Colorado and Wisconsin. There is no compelling, substantive social policy served by exercising jurisdiction over Planet Earth in this action.

## CONCLUSION

It must be emphasized, regardless of the name Plaintiff put on the invoice, all invoices were paid and all transactions were with National Plastics just as they had been for the previous 15 years of business. Planet Earth's involvement in the transactions at issue is a fiction created by Plaintiff. Any debt owed Plaintiff is owed by National Plastics, not Planet Earth. To hail Planet Earth into court in Rhode Island places undue burden on its resources and those of the

Court. To extend the reach of the Court's jurisdiction to a corporation who made no affirmative contacts with the forum offends all traditional notions of fair play and substantial justice.

For the foregoing reasons, Planet Earth requests an Order finding a lack of personal jurisdiction and dismissing it from the case.

Defendant,
PLANET EARTH RECYCLING INC.
By its attorneys,

/s/ Perry L. Glantz

Perry L. Glantz, Esq. (*Pro Hac Vice*)
R. Kirk Mueller, Esq. (*Pro Hac Vice*)
Fognani & Faught, PLLC
1700 Lincoln Street, Suite 2222
Denver, CO 80203
Telephone: 303-382-6200
Facsimile: 303-382-6210

Ronald W. Del Sesto, Esq. (#0242)
DEL SESTO LAW
49 Weybosset Street,
Providence, Rhode Island 02903
Telephone: 401.421.1492
Facsimile: 401.421.9080

Dated: April 2, 2007

**CERTIFICATION**

I hereby certify that on the 2nd day of April, 2007, a true and accurate copy of the foregoing was electronically filed with the U.S. District Court for the District of Rhode Island and served electronically via the Court's ECF system and served upon Jeffrey S. Brenner, Esq. Nixon Peabody LLP, Suite 500, One Citizens Plaza, Providence, RI 02903.

/s/ Perry L. Glantz, Esq.