UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TORAY PLASTICS (AMERICA), INC. | : | |
| | : | |
| V. | : | C.A. No. 06-219/ML |
| | : | |
| T G PLASTICS TRADING CO. INC. d/b/a NATIONAL PLASTICS TRADING CO. and PLANET EARTH RECYCLING INC. | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANT PLANET EARTH RECYCLING INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff Toray Plastics (America), Inc. objects to Defendant Planet Earth Recycling Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction for the reasons set forth in the attached Memorandum.

Plaintiff,
Toray Plastics (America), Inc.,
By its Attorney,

/s/ Jeffrey S. Brenner

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030

Dated: April 30, 2007

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, Ronald W. Del Sesto, Esq., at litigation@in-ri.net, and Perry L. Glantz, Esq., at PGlantz@fornanilaw.com, identified on the Notice of Electronic filing (NEF), on this 30th day of April, 2007.

/s/ Jeffrey S. Brenner

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TORAY PLASTICS (AMERICA), INC. | : | |
| | : | |
| V. | : | C.A. No. 06-219/ML |
| | : | |
| T G PLASTICS TRADING CO. INC. d/b/a NATIONAL PLASTICS TRADING CO. and PLANET EARTH RECYCLING INC. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT PLANET EARTH RECYCLING INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff Toray Plastics (America), Inc. ("Toray") submits this Memorandum in support of its Objection to Defendant Planet Earth Recycling Inc.'s ("Planet Earth") Motion to Dismiss for Lack of Personal Jurisdiction.

## I. OVERVIEW OF ARGUMENT

Toray contracted with Defendant T G Plastics Trading Co., Inc. d/b/a National Plastics Trading Co. ("National Plastics") and Planet Earth to sell them "Excess Material" from Toray's manufacturing facility. National Plastics and Planet Earth each owe Toray a substantial amount of money for unpaid invoices. In May 2006, Toray filed a Verified Complaint seeking damages pursuant to breach of contract, book account, and quantum meruit/unjust enrichment causes of action. In April 2007, Planet Earth filed a Motion to Dismiss for Lack of Personal Jurisdiction contending that Planet Earth has not engaged in any business with Toray or anyone else in Rhode Island. As explained more fully below, Planet Earth is the alter ego of National Plastics and therefore Planet Earth is amenable to suit in Rhode Island based on this Court's undisputed jurisdiction over National Plastics. Furthermore, Planet Earth has sufficient minimum contacts with Rhode Island which subjects it to the jurisdiction of this Court. Accordingly, Planet Earth's Motion to Dismiss should be denied.

II. RELEVANT FACTS

A. THE BUSINESS RELATIONSHIP BETWEEN THE PARTIES

Toray manufactures oriented polyester film products ("PET") in its Lumirror Division and oriented polypropylene ("OPP") film products in its Torayfan Division for consumer packaging and industrial applications. See Verified Complaint ¶6, ¶7. In connection with its PET and OPP manufacturing, Toray has material that does not meet its specifications for its manufacturing process (the "Excess Material"). Id. ¶8. The Excess Material for PET is material that does not meet specification. See Answer to Counterclaim ¶6. The Excess Material for OPP is material that does not meet specification and includes material that is aged, defined as over twelve (12) months old, or obsolete. Id.

In 2004, the relationship between Toray and National Plastics was governed by an e-mail agreement signed by Mr. Goderstad which established the price to be paid for the Excess Material, payment, and the procedure for claims. A copy of the signed e-mail is attached at **Exhibit 1**. One of the important contractual criteria was that National Plastics must "work with [Toray] to secure proper [credit] insurance for [Toray] receivables."

Thereafter, Mr. Goderstad wanted to obtain the Excess Material from Toray as an exclusive business relationship. As a result, from November 1, 2004, through December 31, 2005, the relationship between Toray and National Plastics and Planet Earth was governed by an e-mail agreement dated October 25, 2004. A copy of the e-mail is attached at **Exhibit 2**. This agreement provided that National Plastics and Planet Earth would receive 100% of certain products listed in the e-mail at agreed upon pricing. See Answer to Counterclaim ¶11. The e-mail also contained terms concerning payment, claims resolution, and a provision that "National Plastics/Planet Earth was to maintain credit insurance at a combined minimum level of $1.25mm." Id. Although the e-mail is not signed, it is undisputed that the parties conducted themselves in accordance with the terms of the e-mail unless they agreed otherwise. For example, during 2005, Toray and Mr. Goderstad discussed market pricing, and, as a result,

changes to the agreement were made that resulted in increased pricing for some products and decreased pricing for other products. Id. ¶12.

After National Plastics and Planet Earth removed the Excess Material from Toray, they processed the Excess Material at their facilities in Rhode Island and elsewhere, and they sold the processed Excess Material to their customers, primarily outside of the United States. See Verified Complaint ¶11. Toray invoiced National Plastics and Planet Earth for the Excess Material on a regular basis. Id. ¶12. The invoices are based upon the classification and weight of the Excess Material multiplied by the price per pound which has been previously agreed upon between the parties. Id.

National Plastics and Planet Earth did not fully perform under the agreement because they did not remain within the agreed upon payment terms and they did not substantiate their claims in the agreed upon manner or timeframe. See Answer to Counterclaim ¶13. See also Verified Complaint. Moreover, on February 8, 2006, National Plastics and Planet Earth belatedly asserted undefined claims for product received from Toray in 2005 after Toray had decided to reduce the product provided to National Plastics and Planet Earth from 100% to 75% of the total Excess Material. See **Exhibit 3**.

National Plastics owes Toray $483,831.29 for unpaid invoices, and Planet Earth owes Toray $999,841.69 for unpaid invoices. These unpaid invoices total $1,483,672.98. See Verified Complaint ¶¶19-27. Toray's Verified Complaint seeks damages pursuant to breach of contract, book account, and quantum meruit/unjust enrichment causes of action. Remarkably, Planet Earth's Answer denied any contractual relationship with Toray and disputed jurisdiction, although it did not file a Motion to Dismiss. On April 2, 2007, Planet Earth filed a Motion to Dismiss based upon lack of personal jurisdiction. For the reasons discussed within this Memorandum, this Court should deny Planet Earth's Motion to Dismiss.

Planet Earth's Motion to Dismiss should be treated as a Motion for Summary Judgment, because it refers to many documents in support of the Motion that are not part of the pleadings in this case. Additionally, although Toray believes that it has demonstrated sufficient reasons for

this Court to deny the Motion to Dismiss, Toray has yet to depose Mr. Goderstad, despite the parties' good faith effort to schedule his deposition. In the event that the Court is even considering granting the Motion to Dismiss, Toray must first have leave to depose Mr. Goderstad pursuant to Rule 56(d). Additionally, Planet Earth's responses to discovery are woefully deficient and a Motion to Compel is pending before this Court concerning the deficient responses. Accordingly, jurisdictional discovery must be completed before this Court can determine a Motion to Dismiss alleging lack of jurisdiction. See Cirino-Encarnacion v. Concilio De Salud Integral De Loiza, Inc., 317 F.3d 69, 70 (1st Cir. 2003) (holding that district court was premature in acting on motion to dismiss when defendants had not produced relevant jurisdictional discovery).

## B. THE IMPORTANCE TO TORAY OF PLANET EARTH AS A PURCHASER OF EXCESS MATERIAL

It is undisputed that Toray sent Planet Earth hundreds of invoices for Excess Material from September 2004 to April 2006 for hundreds of tons of Excess Materials, that Toray credited the Planet Earth account when Planet Earth provided proper documentation, and that the parties have exchanged hundreds of pages of invoices, requests for credits, and credits. Neither Planet Earth, National Plastics, nor Mr. Goderstad ever complained to Toray that the invoices were being sent to the wrong company. See **Exhibit 4**, ¶¶ 9,10 (Affidavit of Dave Jose). Instead, Mr. Goderstad caused many of the invoices to be paid, albeit from the alter ego National Plastics. Also, the e-mails from Planet Earth's representatives attached at **Exhibit 5** make it clear that Planet Earth and National Plastics had separate accounts with Toray from their own perspective.

Toray's invoicing to Planet Earth for Excess Material was specifically agreed to by Toray and Planet Earth's president, Mr. Goderstad. Richard Schloesser, Toray's Senior Vice President and General Manager, explained this situation in his deposition testimony:

> When Torge asked for a 100 percent of the business, the exposure to Toray would have been greater than we could get through our credit insurance based on the financials of National Plastics. We said to him that he needed to come up with some financial information that would provide support for additional credit exposure. He said, I will offer up my company. . . . Planet Earth. I will offer up Planet Earth, as a company, so that you can secure additional credit. The information, the financials for Planet Earth were sent to the accounting department, to Dave Jose. We went to the credit insurance company with them and we were given additional credit. So, what we did was, we setup the Lumirror division for Planet Earth and National Plastics for Torayfan. So we had two separate scrap dealers, two separate lines of credit, two separate invoices for the two divisions.
>
> See **Exhibit 6** (transcript from Richard Schloesser's deposition at 28-29).

The existence of Planet Earth as a purchaser of Excess Material was extremely important to Toray. As explained in the Affidavit of David Jose, Toray's Senior Director of Finance and Administration, attached at **Exhibit 4**, because of Toray's credit insurance requirements, Toray would not have allowed National Plastics to have an exclusive arrangement to purchase the Excess Material unless there was a second Goderstad company – Planet Earth – which would purchase the Excess Material from Toray's Lumirror Division. Moreover, Toray would not have provided the volume of Excess Material to National Plastics that the combined companies of National Plastics and Planet Earth purchased, because of the credit insurance maximum amount of coverage issue.

Planet Earth wants this Court to believe that Toray unilaterally sent invoices to Planet Earth. However, as explained above, Mr. Goderstad, Planet Earth's president, specifically told Toray to invoice Planet Earth for the Excess Material concerning Toray's Lumirror Division. This was a requirement in order for Toray to provide Mr. Goderstad's companies with an exclusive supply arrangement for the Excess Material Mr. Goderstad sought from Toray.

Planet Earth also wants this Court to believe that Toray considered National Plastics and Planet Earth as the same company for all purposes. However, as explained above, although Toray acknowledged that National Plastics and Planet Earth were related corporate entities with the same

principal,[1] Toray's Lumirror Division provided Excess Material to Planet Earth and Toray's Torayfan Division provided Excess Material to National Plastics. Toray invoiced Planet Earth and National Plastics separately. No one ever complained that Toray should not be invoicing Planet Earth, and Planet Earth always accepted the Excess Material provided by Toray. See **Exhibit 4**, ¶10.

Planet Earth heavily relies upon cherry-picked portions of George Watts' deposition testimony. Mr. Watts is a former employee of Toray who was terminated involuntarily in March 2005. Since then, Mr. Watts has not had any contact with Toray, but he has had substantial meetings and conversations with Mr. Goderstad as well as conversations with defense counsel. See **Exhibit 8** (relevant portion of the transcript from George Watts' deposition). Despite the obvious bias against Toray detailed in his deposition, Mr. Watts clearly testified that "there was a business relationship between National Plastics and Toray as well as between Planet Earth and Toray." See **Exhibit 8** at 28-29.

In fact, Planet Earth submitted information to Toray's credit insurance company to allow Toray to apply for an additional $500,000 in credit insurance. As a result, Toray received an additional $500,000 in credit insurance to cover Excess Material purchased by Planet Earth while maintaining $500,000 to cover Excess Material purchased by National Plastics. During this process of determining credit risk, Toray asked its broker, AON Risk Services of New York to contact Mr. Goderstad directly to determine what information the credit insurance company would need in order to approve separate coverage for Planet Earth. Subsequently, Toray received notification from its credit insurance company that the limit was approved thereby allowing Toray to allow the credit exposure, in accordance with Toray's internal policies, to Planet Earth as well as to National Plastics. See **Exhibit 4**, ¶6.

---

1 Planet Earth cites to an e-mail allegedly from Scott Van Winter. As explained in Mr. Van Winter's deposition which pre-dated the Motion to Dismiss, he did not author that e-mail. See **Exhibit 7** (relevant portion of Mr. Van Winter's deposition transcript). Regardless, the e-mail merely acknowledges because Planet Earth and National Plastics are both corporate entities of Mr. Goderstad, and the assumption that if one company is refusing to pay Toray for Excess Material previously provided, then the other company also will probably become a payment problem.

It was agreed between Toray, National Plastics, and Planet Earth that Toray would establish two different accounts for the supply of Excess Material. Specifically, Planet Earth would purchase and be invoiced for Excess Material from the Lumirror Division, and National Plastics would purchase and be invoiced for Excess Material from the Torayfan Division. Toray sent National Plastics and Planet Earth invoices pursuant to this agreement from September 2004 through April 2006. Id. ¶ 7.

### C. THE SYMBIOTIC RELATIONSHIP BETWEEN NATIONAL PLASTICS AND PLANET EARTH

National Plastics and Planet Earth have business locations at the same address at 2230 East Grand Avenue, Englewood, Colorado. See Verified Complaint ¶9. National Plastics and Planet Earth are related entities controlled by Mr. Goderstad. Id. These allegations are confirmed by the Colorado Secretary of State's Office. See **Exhibit 9** (copies of official documents from the Colorado Secretary of State' Office). In fact, Mr. Goderstad is the President of Planet Earth and National Plastics. Additionally, Mr. Goderstad and his wife are the sole shareholders of Planet Earth and National Plastics. See **Exhibit 10** (relevant portion of 2005 tax returns).

## III. STANDARD OF REVIEW

Courts use the *prima facie* standard to determine whether personal jurisdiction is lawful. Scarlatelli v. Swarovski Optik N. Am., Ltd., 2006 U.S. Dist. LEXIS 63823, *5 (D.R.I. June 26, 2006) (citing Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997)). Under the *prima facie* standard, a court "must accept plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." Swarovski Optik N. Am. Limited v. Euro Optics, Inc., 2003 U.S. Dist. LEXIS 14881, *7 (D.R.I. Aug. 25, 2003) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)). These facts are taken as true whether or not disputed and are construed in the light

most congenial to the plaintiff's jurisdictional claim. Id. (quoting Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

The prima facie standard permits the Court "to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). To make this showing, the plaintiff cannot simply rest upon the pleadings but must make affirmative proof of specific facts supportive of the court's jurisdiction. Id. In employing this analysis, the court acts not as a factfinder, but instead, as it would in the summary judgment context. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

## IV. ARGUMENT

### A. PLANET EARTH IS SUBJECT TO THE JURISDICTION OF THIS COURT PURSUANT TO THE ALTER EGO DOCTRINE

The thrust of Defendant's argument is that Planet Earth is not subject to personal jurisdiction in Rhode Island because it lacks the requisite contacts with this forum. However, Defendant's argument fails as a matter of law, because Planet Earth is the "alter ego" of National Plastics. It is undisputed that this Court has jurisdiction over National Plastics. Therefore, the nature and volume of Planet Earth's contacts with Rhode Island is irrelevant and this Court should equate jurisdiction over National Plastics with jurisdiction over Planet Earth.

While alter ego liability may be most common in an ordinary parent-subsidiary context, "the equitable doctrine of piercing the corporate veil is not limited to the parent-subsidiary relationship." Brotherhood of Locomotive Engineers v. Springfield Terminal Railway, 210 F.3d 18, 24 (1st Cir. 2000) (quoting C M Corp. v. Oberer Dev. Co., 631 F.2d 536, 538 (7th Cir. 1980)). Courts have applied the alter ego and veil piercing doctrines in cases involving "sibling" corporations and in cases involving entities in the same corporate family. Id. at 25 (citing Minnesota Power v. Armco, Inc., 937 F.2d 1363, 1364 (8th Cir. 1991); Burlington Northern Railroad Co. v. United Transp. Union, 862 F.2d 1266, 1275 (7th Cir. 1988)).

Under the alter ego rule, a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction. See Russell v. Enterprise Rent-A-Car Co. of Rhode Island, 160 F. Supp. 2d 239, 252 (D.R.I. 2001). If the court finds one entity to be the alter ego of the other, jurisdiction over the subsidiary results in jurisdiction over the non-resident parent. Id.; United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992) (if subsidiary's contacts can be attributed to parent company, then "the jurisdictional hurdle can be vaulted."). See also Cronin v. Eipper Aircraft, Inc., 1990 U.S. Dist. LEXIS 13208, *6 (D.R.I. July 17, 1990) (quoting 2 Moore's Federal Practice, ¶4.41-1[6] (2d ed. 1985) (A foreign parent or subsidiary corporation may be found amenable to service of process in the forum state on either of two theories . . . [agency theory] . . . the second basis for exercise of jurisdiction is that the parent company exerts such domination and control over the subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction)); Moore's Federal Practice, §108.42(3)(b)(4) (3d ed. 2006) (when the appearance of separateness is actually a sham, the contacts of one may be imputed to the other).

Essentially, the determination of whether a parent corporation is the alter ego of its subsidiary (or vice-versa) involves the same inquiry employed in a veil-piercing analysis. Russell, 160 F. Supp. 2d at 252. Among the various factors that Rhode Island courts consider when determining whether to extend jurisdiction on an alter ego or veil-piercing theory are whether the officers and directors of the two corporations are the same and the extent of control by the parent over the day to day operations of the subsidiary. Cronin v. Eipper Aircraft, Inc., 1990 U.S. Dist. LEXIS 13208, *6 (D.R.I. July 17, 1990). There is no single controlling factor; rather courts look to all relevant facts and circumstances to determine whether the two corporations are separate and distinct. Id. The Russell court discussed several factors that a court examines in determining whether corporate formalities have been observed. These factors include whether the parent corporation and its subsidiary were separately incorporated, had

separate boards of directors, maintained separate financial records, and had separate facilities and operating personnel. Russell, 160 F. Supp. 2d at 252 (citing de Walker v. Pueblo Int'l, Inc., 569 F.2d 1169, 1171 (1st Cir. 1978)).

In a case closely analogous to the present action, Cronin v. Eipper Aircraft, Inc., 1990 U.S. Dist. LEXIS 13208, (D.R.I. July 17, 1990), the defendants attempted to insulate the parent corporation of a subsidiary, from any possible liability by claiming that the parent and subsidiary were separate and distinct entities. The Court held that if the subsidiary was found to be the "alter ego" of the parent and there were sufficient grounds for personal jurisdiction over one, it would be compelled to find personal jurisdiction over the other. The Cronin court looked to the test established in Cannon Mfg. Co. v. Cudahy Co., 267 U.S. 333 (1925), to determine this personal jurisdiction issue. Under this test, the question is whether "the parent and subsidiary are separate and distinct corporate entities." Id. at 335. In Cronin, the Court weighed the various veil-piercing/alter-ego factors discussed above and noted that the parent and subsidiary had the same president and that the two corporations operated from the same address. Cronin, 1990 U.S. Dist. LEXIS 13208 at *7. Additionally, both corporations had been involved with manufacturing the same product using the same assets. The Court applied the Cannon test to these operative facts and found that the subsidiary corporation was the "alter ego" of its parent so that the two corporations were the same for jurisdictional purposes. The Court denied the defendants' motion to dismiss for lack of personal jurisdiction finding both the parent and subsidiary subject to the Court's jurisdiction. Id. at **15-16.

The operative facts in Cronin that led the Court to equate jurisdiction over the parent to jurisdiction over the subsidiary are equally present here. The following facts are uncontested: both National Plastics and Planet Earth share the same president -- Torge Goderstad; both corporations have the same shareholders; both corporations operate from the same address; and both corporations are involved in purchasing, removing, and processing Excess Material sold by Toray to them.

Moreover, Planet Earth's Memorandum contains statements which demonstrate that Planet Earth was merely the alter ego of National Plastics and that the two corporations functioned as one entity. For example, Planet Earth failed to maintain separate financial records because all of the invoices submitted by Toray, "whether in the name of Planet Earth or National Plastics, were paid by National Plastics." See Defendant's Memorandum in Support of Motion to Dismiss at 3. Other factors discussed in Russell,160 F. Supp. 2d at 252, further demonstrate that Planet Earth was nothing more than the alter ego of National Plastics. For example, Planet Earth has no separate facility and the records from the Colorado Secretary of State indicate that both companies operate from the same address. Additionally, there is no separate board of directors for Planet Earth and Torge Goderstad and his wife are the sole shareholders of both companies. Finally, and perhaps most indicative of the fact that Planet Earth and National Plastics are one and the same entity is the email correspondence between the parties that formed the basis of the contract at issue in this dispute, which consistently referred to the contract as the "National Plastics/Planet Earth Agreement."

## B. PLANET EARTH HAS MINIMUM CONTACTS WITH RHODE ISLAND WHICH SUBJECTS IT TO THE JURISDICTION OF THIS COURT

This Court must apply Rhode Island law to determine if jurisdiction is proper. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). Rhode Island's long-arm statute is coextensive with the due process requirements of the Constitution. Ben's Marine Sales v. Sleek Craft Boats, 502 A.2d 808 (R.I. 1985). Thus, Plaintiffs must show that this Court's acceptance of jurisdiction in this matter would not violate Defendants' due process rights.

A non-resident's due process rights are not violated if the non-resident has sufficient "minimum contacts" with the forum such that exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The minimum contacts standard can be satisfied in two ways. The defendants must be subject to the court's general or specific personal jurisdiction. Roth v.

Garcia Marque, 942 F.2d 617, 620 (9th Cir. 1991); M. Barry v. Mortgage Servicing Acquisition Corp., 909 F. Supp. 65, 72 (D.R.I. 1995).

To establish Rhode Island's specific personal jurisdiction over a defendant, the plaintiff must meet a three-prong test:

> (1) defendant must have purposefully availed itself of the privileges of conducting activities in the forum by some affirmative act or conduct;
>
> (2) the claim must arise out of or result from the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must be reasonable.
>
> Sawtelle v. Farrel, 70 F.3d 1381 (1st Cir. 1995) (emphasis added).

These three requirements have been met in this matter, and this Court has specific personal jurisdiction over Planet Earth.

### 1. PLANET EARTH HAS "PURPOSEFULLY AVAILED" ITSELF OF THE PRIVILEGES OF CONDUCTING ACTIVITIES IN RHODE ISLAND

The "purposeful availment" prong assures that a nonresident defendant will be aware that it could be sued in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In other words, this requirement protects a nonresident from being haled before a court solely because of "attenuated" contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). To pass this part of the test, it must be foreseeable that the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there. World-Wide Volkswagen, 444 U.S. at 295.

Purposeful availment requires in-state conduct by the defendant which is both voluntary and which makes it reasonably foreseeable that the defendant might be sued in the forum. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994). It is clear that Planet Earth voluntarily entered into a business relationship with Toray and that the relationship

resulted in the sale of Excess Material to Planet Earth to satisfy the purposeful availment prong. See Microfibres, Inc. v. Squires Hightech Corp., 2006 U.S. Dist. LEXIS 7914, *20 (D.R.I. Jan. 13, 2006) (voluntariness requirement met where parties' business relationship resulted in the sale of goods to out of state defendant). As discussed above, Mr. Goderstad approached Toray, requesting an exclusive arrangement to purchase Excess Material. In response to Toray's concern that it would need to secure additional credit insurance, Mr. Goderstad specifically offered Planet Earth as a company to meet the credit insurance requirements. Planet Earth was subsequently invoiced for Toray's Lumirror Division.

As to the foreseeability component of purposeful availment, when a defendant intentionally directs activities at the forum state which relate to the alleged claims, there is fair warning. Microfibres, Inc., 2006 U.S. Dist. LEXIS 7914 at *22 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). Here, the activities which Planet Earth intentionally directed toward Rhode Island, such as soliciting Toray's business, ordering Excess Material from Toray, seeking credits for allegedly deficient or mismarked Excess Material, and causing some of the invoices to be paid, gave Planet Earth fair warning. Therefore, it was foreseeable that Planet Earth, by voluntarily availing itself of the benefits of Rhode Island law and by reaching out to Toray, could be haled into court in Rhode Island, and the element of purposeful availment is satisfied.

2. TORAY'S CLAIM AGAINST PLANET EARTH ARISES OUT OF PLANET EARTH'S RHODE ISLAND RELATED ACTIVITIES

The issues in dispute in this case are related to Planet Earth's Rhode Island activity. Mr. Goderstad, on behalf of both National Plastics and Planet Earth, contacted Toray's George Watts, the primary contact with Mr. Goderstad, to discuss expanding the volume of Excess Material provided by Toray to National Plastics. See **Exhibit 4**, ¶2. During these discussions, Mr. Goderstad requested an exclusive supply arrangement for Toray's Excess Material. Mr. Watts then presented this request to Toray's Finance Group. An internal discussion within Toray

then occurred regarding the credit risk exposure of selling all excess materials to one company, because the existing credit insurance program that Toray used would only cover up to $500,000 for an existing customer that has had good payment history but would not support a higher credit limit for one company without providing financial data that would support that higher credit line. Id. ¶3.

In response to Mr. Goderstad's request for an exclusive arrangement, Toray told Mr. Goderstad that an exclusive arrangement for Toray's Excess Material would not be possible because Toray's credit insurance coverage was limited to $500,000 based upon National Plastics' existing financial condition, and that Toray would not provide National Plastics with an additional volume of Excess Material that would result in an exclusive arrangement. Id. ¶4. Mr. Goderstad then offered to Toray that Planet Earth would purchase some of the Excess Material so that the companies he owned could receive an exclusive arrangement concerning the Excess Material and Toray could obtain additional credit insurance. Id. ¶5.

Toray and Mr. Goderstad also exchanged many e-mails on these matters. The e-mails also demonstrate Toray's concern at the debt Planet Earth was accumulating as well as specific payments made by Planet Earth for invoices sent by Toray. Indeed, the discovery materials produced to date reveal that the parties' business relationship was itself based on hundreds of e-mail communications which alone constitute a significant source of personal jurisdiction over Planet Earth. See Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 37 (D.R.I. 2003) (courts in the First Circuit and other circuits have "recognized (increasingly so in recent years) that Internet-based contacts, such as e-mail communications, particularly when coupled with other more traditional contacts, offer compelling grounds for the assertion of personal jurisdiction over a non-resident defendant").

These contacts between Toray and Planet Earth go to the very heart of the dispute in this case, that is, the failure of National Plastics and Planet Earth to honor the agreed upon payment terms and their failure to assert product claims in the agreed upon manner or timeframe. Therefore there is a sufficient "causal nexus between [the defendant's] forum-based contacts and the harm

underlying [the plaintiff's] complaint." Northeastern Land Servs., Ltd. v. Schulke, 988 F. Supp. 54, 57-58 (D.R.I. 1997). Accordingly, this Court has personal jurisdiction over Planet Earth.

### 3. THE EXERCISE OF PERSONAL JURISDICTION OVER PLANET EARTH WOULD BE REASONABLE

The First Circuit has outlined five relevant factors for a reasonableness analysis:

- The defendant's burden of appearing;
- The forum state's interest in adjudicating the dispute;
- The plaintiff's interest in obtaining convenient and effective relief;
- The judicial system's interest in obtaining the most effective resolution of the controversy;
- The common interests of all sovereigns in promoting substantive social policies.

United Electrical Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).

Balancing each of the above factors confirms that it would be reasonable to assert personal jurisdiction in Rhode Island over Planet Earth. In terms of the burden of defending this suit in Rhode Island, "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Mr. Goderstad and Defendants' primary counsel from Colorado have appeared in Rhode Island on at least three occasions for various court appearances and depositions. Therefore, Planet Earth's burden of appearing is not special or unusual. See Microfibres, Inc. v. Squires Hightech Corp., 2006 U.S. Dist. LEXIS 7914, *25 (D.R.I. Jan. 13, 2006) (finding burden factor not meaningful where defendant's agents had appeared in Rhode Island on at least three occasions).

Moreover, Planet Earth has represented in its Objection to Motion to Compel that it does not have any documents to produce in this case beyond what National Plastics has already produced in Initial Disclosure. With respect to witnesses, the people with knowledge of the facts in this dispute who have been identified by National Plastics are the same people who have

knowledge concerning Planet Earth. Thus, there is no possible burden to Planet Earth to defend this lawsuit against National Plastics and Planet Earth which is already pending in Rhode Island.

In determining Rhode Island's interest in adjudication, Rhode Island has an interest in seeing that a forum is provided to Toray, a Rhode Island company, because it supplied Excess Material to Planet Earth, Planet Earth breached the parties' agreement by failing to honor the payment terms, and Planet Earth owes Toray a substantial sum for unpaid invoices. See Microfibres, Inc., 2006 U.S. Dist. LEXIS 7914 at *26 (Rhode Island has an interest in seeing that a forum is provided to a Rhode Island company that has produced and sold goods to an out of state defendant and has not received its due compensation for those goods).

The third factor, the plaintiff's interest in obtaining convenient and effective relief also weighs in favor of Toray and Rhode Island. The aim is to ensure that a plaintiff is able to obtain "convenient and effective relief." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). To achieve this purpose, a court must generally "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Id. (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994)). Toray is a Rhode Island corporation. It filed this action in the District of Rhode Island. It is more convenient for Toray to litigate this lawsuit in Rhode Island than in any other jurisdiction, and it is not inconvenient or burdensome for Planet Earth to litigate in Rhode Island. Moreover, Rhode Island has a substantial interest in providing a forum for a Rhode Island corporation to resolve its claim. See Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 38 (D.R.I. 2003). The efficient administration of justice also favors Rhode Island, because this lawsuit has been proceeding here since May 2006 and this Court has become familiar with the claims involved. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 62-63 (1st Cir. 2002).

Finally, as to the "common interests" factor, Rhode Island has the greatest connection with this dispute. As a fundamental social policy, it is desirable that the court which is most concerned with a controversy (i.e., one where the alleged wrongdoing has occurred within its jurisdiction) should adjudicate the dispute. Colibri Corp. v. Curly & Smooth Handels GmbH, 2004 U.S. Dist.

LEXIS 26711, *33 (July 9, 2004). Here, the contract at issue was made in Rhode Island when Planet Earth requested that Toray provide it with Excess Material which Toray then produced and delivered. See Microfibres, Inc. v. Squires Hightech Corp., 2006 U.S. Dist. LEXIS 7914 (D.R.I. Jan. 13, 2006) (finding that contracts were formed in Rhode Island where out of state defendant placed its orders for goods from Rhode Island company and therefore concluding that Rhode Island had greatest interest in dispute). Furthermore, the breach of contract occurred in Rhode Island when Planet Earth failed to submit payment to Toray after taking the Excess Material. See id. at *27. Thus, Rhode Island has the largest interest in this matter.

It is apparent that the reasonableness factors discussed above favor the exercise of jurisdiction by this Court. It would be a waste of judicial resources to have one lawsuit pending in Rhode Island against National Plastics and another lawsuit pending in Colorado against Planet Earth when the operative facts are the same. Accordingly, this Court should deny Planet Earth's Motion to Dismiss for lack of personal jurisdiction.

## V. CONCLUSION

For the reasons stated above, this Court should deny Planet Earth's Motion to Dismiss for lack of personal jurisdiction. Alternatively, this Court should allow Toray the opportunity to complete jurisdictional discovery before it determines Planet Earth's Motion to Dismiss.

Plaintiff,
Toray Plastics (America), Inc.,
By its Attorney,

/s/ Jeffrey S. Brenner

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
E-mail: JBrenner@nixonpeabody.com

Dated: April 30, 2007

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, Ronald W. Del Sesto, Esq., at litigation@in-ri.net, and Perry L. Glantz, Esq., at PGlantz@fornanilaw.com, identified on the Notice of Electronic filing (NEF), on this 30th day of April, 2007.

/s/ Jeffrey S. Brenner